# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

RAYMOND LAWRENCE HAMLETT,

        Plaintiff,

v.                                       No. CIV-15-0725 RB/LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

        Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

**THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum* (*Doc. 18*) filed on April 7, 2016 (hereinafter "motion"). On July 13, 2016, Defendant filed a response to the motion (*Doc. 21)* and, on August 4, 2016, Plaintiff filed a reply (*Doc. 26*). On August 21, 2016, United States District Judge Robert C. Brack issued an order referring this case to the undersigned to hold hearings, perform legal analysis, and prepare proposed findings and a recommended disposition, if necessary. [*Doc. 6*]. The Court has reviewed the motion, response, reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record.

---

[1] Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition. A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed. Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.

[*Doc. 13*].  For the reasons set forth below, the Court recommends that ***Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*** (*Doc. 16*) be **GRANTED** and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED**.

## I.   Procedural History

On July 21, 2011, Plaintiff filed applications for Disability Insurance Benefits (hereinafter "DIB") and Supplemental Security Income (hereinafter "SSI") (*Doc. 13-13* at 2-3 and 4-9, respectively), alleging onset of disability on April 28, 2011 (*id.* at 4 and 10, respectively). Plaintiff stated that he was disabled by back pain, neck pain, sciatica, and hypertension. [*Doc. 13-14* at 6].  Plaintiff's applications were denied at the initial level on October 21, 2011 (*Doc. 13-9* at 2-3), and at the reconsideration level on March 28, 2012 (*id.* at 4-5).  Pursuant to Plaintiff's request (*Doc. 13-10* at 26-29), Administrative Law Judge Michelle K. Lindsay (hereinafter "ALJ") conducted a hearing on October 3, 2013 (*Doc. 13-8* at 2-41).  Plaintiff appeared at the hearing, represented by his former attorney, Agatha Brody, and testified.  *Id.* at 7-33.  Vocational Expert Cornelius J. Ford[2] (hereinafter "VE") also testified.  *Id.* at 33-39. On January 24, 2014, the ALJ issued her decision, finding that, under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 13-6* at 28].  On March 24, 2014, Plaintiff's former counsel requested that the Appeals Council review the ALJ's decision. [*Doc. 13-3* at 21-22].  On May 7, 2014 (*id.* at 26) and May 23, 2014 (*Doc. 13-4* at 3), Plaintiff's current counsel submitted additional medical records to the Appeals Council for its consideration.

---

[2] Mr. Ford is identified in the hearing transcript as "TJ Ford" (*Doc. 13-8* at 2 and 5); however, his resume identifies him as "Cornelius Joseph Ford" (*Doc. 13-12* at 26-28).

On June 19, 2015, the Appeals Council denied review on the ground that it had "found no reason under our rules to review the [ALJ]'s decision. *Id*. at 3.   In its decision, the Appeals Council indicated that it had considered the additional evidence submitted, but that any evidence for a period after the date of the ALJ's decision "does not affect the decision about whether you were disabled beginning on or before January 24, 2014." *Id*. at 4.   This was the final decision of the Commissioner.   On August 8, 2015, Plaintiff filed his complaint in this case.   [*Doc. 1*].

## II.   Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).   If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.   *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).   Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.   *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).   An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of

evidence supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of DIB and SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a) and 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R SS 404.1520 and 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is

unable to perform his "past relevant work."   20 C.F.R. § 404.1520(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.   *Grogan*, 399 F.3d at 1261.

## IV.   Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on October 8, 1974, and was 36 years old, which is defined as a "younger person" aged 18-49 (20 C.F.R. §§ 404.1563(c); 416.963(c)), on the alleged disability date of April 28, 2011.   [*Doc 13-14* at 2].   Plaintiff's previous work was as a dispatcher for a freight company, a construction crew leader, a cook/bartender, and a general laborer.   *Id.* at 14. Plaintiff claims disability due to degenerative disc disease in his lumbar and cervical spine, depressive disorder, and borderline personality disorder.   [*Doc. 18* at 1].   Plaintiff's medical records include[3]:  Disability Determination Examination, dated October 8, 2011, by Laura A Briggs, M.D. (*Doc. 13-16* at 22-26); Physical RFC Assessment, dated October 21, 2011, by Stephen A. Whaley, M.D. (*id.* at 31-38); Physical RFC Assessment, dated July 6, 2011, by Shauna McCosh, CNP (*Doc. 13-26* at 8); Treatment records from Hidalgo Medical Services for the periods:  from December 15, 2010 to January 9, 2012 (*Doc. 13-26* at 21 through *Doc. 13-27*

---

[3] This decision directly addresses only the ALJ's assessment of the opinion of Certified Nurse Practitioner Shauna McCosh and the ALJ's determination that Plaintiff's depression does not meet or medically equal Listing 1.04.  Therefore, the numerous medical records relating to Plaintiff's other impairments are, for the most part, not listed here.  Additional medical records provided by Plaintiff's counsel after the ALJ's decision was entered (*Doc. 13-3* at 26; through *Doc. 13-6* at 14) also are not specifically identified here, but are part of the record that should be considered on remand.  *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994) (new evidence submitted to Appeals Council becomes part of the administrative record); *Smith v. Apfel*, 141 F.3d 1185, at *4 (10th Cir. 1998) (unpublished) (records submitted to Appeals Council should be considered by the ALJ on remand).

at 23) and from February 9, 2012 to December 6, 2012 (*Doc. 13-50* at 57-72); Initial Psychiatric

Evaluation, dated September 20, 2012, by Glenn Michael Dempsey, M.D., Socorro Mental

Health, Inc. (*Doc. 13-27* at 24-25); Comprehensive Service Plan, dated April 29, 2013, also from

Socorro (*id.* at 29-31); Initial Behavioral Health Assessment, dated July 3, 2012, also from

Socorro Mental Health, Inc. (*id.* at 32-38); Treatment records from Border Area Mental Health for

the period from March 13, 2012 through September 11, 2013 (*Doc. 13-50* at 4-56); and Psychiatric

hospitalization records from Gila Regional Medical Center for the periods:  from April 13-19,

2012 (*Doc. 13-33* at 13 through *Doc. 13-41* at 7), from April 28, 2012 through May 1, 2012

(*Doc. 13-28* at 2 through *Doc. 13-33* at 12), and from June 24-27, 2012 (*Doc. 13-43* at 2 through

*Doc. 13-44* at 3).   Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step SEP, the ALJ found that Plaintiff had not engaged in substantial

gainful activity since April 28, 2011, the alleged onset date.   [*Doc. 13-6* at 20].   At step two, the

ALJ found that Plaintiff has the following severe impairments:   "degenerative disc disease of the

lumbar spine, status post-surgical intervention; degenerative disc disease of the cervical spine;

depressive disorder; borderline personality disorder with dependent personality traits; and alcohol

abuse."   *Id.*   At the third step, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 C.F.R.  § 404,  Subpt. P, Appx. 1  (20 C.F.R. §§ 404.1520(d),  404.1525,

404.1526, 416.920(d), 416.925 and 416.926).   *Id.*   The ALJ considered Listing 1.04 Disorders of

the Spine, as well as mental Listings 12.04 (Affective Disorders) and 12.08 (Personality

Disorders).   *Id.* at 21-22.   In reaching her determination regarding listed mental impairments, the

ALJ found that Plaintiff has mild restriction of his activities of daily living; moderate difficulty

with social functioning; moderate difficulty with concentration, persistence, and pace; and has had

no episodes of decompensation of extended duration.   *Id.* at 21.   The ALJ therefore concluded

that Plaintiff had not satisfied the Paragraph B criteria.   *Id.*   The ALJ then found that "the

evidence fails to establish the presence of the 'paragraph C' criteria of Listing 12.04," as well.   *Id*.

at 21-22.

Before step four, the ALJ determined Plaintiff's RFC, concluding that he has the functional

capacity to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except
> [Plaintiff] can lift, carry, push, and pull 20 pounds occasionally and 10 pound [sic]
> frequently; sit for at least six hours in an eight-hour workday; and stand and walk in
> combination for six hours in an eight-hour workday; he requires the option to
> perform work seated or standing; he can occasionally climb stairs and ramps, stoop,
> crouch, kneel and crawl; frequently balance; never climb ladders, ropes or
> scaffolds; and must avoid concentrated exposure to extreme cold, unprotected
> heights, and vibration. He is further limited to understanding, remembering, and
> carrying out only simple instructions; is able to maintain attention and
> concentration to perform simple tasks for two hours at a time without requiring
> redirection to task; requires work involving no more than occasional change in the
> routine work setting; can have only occasional contact with the general public; and
> can have only occasional interactions with co-workers and supervisors.

*Id*. at 22.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.   *Id*.

at 26.   The ALJ based this conclusion on the VE's testimony that Plaintiff's previous work had

been actually performed by Plaintiff as light semi-skilled, heavy semi-skilled, and very heavy

unskilled, none of which Plaintiff could perform with his current RFC.   *Id*.   Based on that

determination, the ALJ proceeded to step five, where she relied on the VE's testimony that

Plaintiff would be able to perform the requirements of representative occupations such as

assembler (DOT[4] 706.684-022), garment sorter (DOT 222.687-014), and wire cutter/stripper (DOT 728.684-022), all of which are considered light, unskilled work. *Id*. at 27-28. The ALJ found that the VE's testimony was consistent with the DOT information, and concluded that Plaintiff "is capable of making a successful adjustment to other work that exists in significant numbers in the national economy," and that he is "not disabled." *Id*. at 28.

## V.   Analysis

In his motion, Plaintiff contends that:  (1) the ALJ failed to provide adequate reasons for rejecting the opinion of treating Certified Nurse Practitioner Shauna McCosh; (2) the ALJ's Listing 12.04 determination is "clearly erroneous"; (3) the ALJ's "light work" exertional rating is unsupported by substantial evidence and is contrary to law; and (4) the ALJ failed to identify and resolve a conflict between the RFC she assessed for Plaintiff and the jobs identified by the VE. [*Doc. 18* at 2].   Defendant disputes these contentions and argues that:  (1) "the ALJ provided several valid reasons for giving little weight to nurse McCosh's opinion" (*Doc. 21* at 8); (2) the ALJ's finding that Plaintiff did not meet the Listing 12.04 criteria is supported by substantial evidence (*id*. at 10); (3) Plaintiff's challenges to the ALJ's RFC are not well taken (*id*. at 9-10); and (4) "there are no material conflicts between [the VE's] testimony and evidence in the [DOT]" (*id*. at 12).   In his reply, Plaintiff states that:  (1) the ALJ did not follow the correct legal standard for evaluating Nurse Practioner McCosh's opinion (*Doc. 26* at 3); (2) the ALJ failed to explain why Plaintiff's severe depression does not meet the criteria of Listing 12.04 (*id*. at 4); (3) the

---

[4]  DOT stands for "Dictionary of Occupational Titles," available at http://www.occupationalinfo.org/   (site last visited December 7, 2016).

ALJ's RFC improperly fails to specify either duration or frequency for the sit/stand limitation (*id*. at 7); and (4) the ALJ could not rely on the VE's testimony as it was based on insufficient hypotheticals (*id*. at 8).

### A.   The ALJ's Consideration of Ms. McCosh's Opinion

Shauna McCosh, CNP, at Hidalgo Medical Services, Mimbres Valley Clinic, began acting as Plaintiff's primary medical care provider in December 2010.   *See* [*Doc. 13-26* at 8 and *Doc. 13-27* at 21].   Plaintiff also received treatment from other medical providers who worked in the same clinic with Ms. McCosh, including physicians.   *See, e.g.,* [*Doc. 13-26* at 28-29 and 32-33].   On July 6, 2011, Ms. McCosh saw Plaintiff to review his pain medication needs. [*Doc. 13-27* at 8].   At that visit, Ms. McCosh noted that Plaintiff was there for:

> [f]ollow up from back surgery 2 months ago and car accident 2 weeks ago, for an old injury in his neck with arthritis.   Back pain was getting better before accident, but it is really bad now.   Two days ago fell walking through his kitchen, mom witnessed and she felt he lost consciousness for a few seconds and his eyes rolled back.   3 incidents of dizziness yesterday.   [Plaintiff] brought in some paper work from the state for disability.

*Id*.   Ms. McCosh noted that Plaintiff was "alert and oriented," but was also "uncomfortable [and] tearful."   *Id*.   She noted "weakness in [Plaintiff's] left leg," as well as diminished sensations in his extremities.   *Id*.   Plaintiff's musculoskeletal symptoms consisted of:   "back pain, tingling/numbness, muscle weakness, pain with movement, shooting leg pain, sciatica, neck pain, arthritis, [and] muscle cramping."   *Id*. at 9.   His neurological symptoms consisted of: "headache, tingling, numbness, insomnia, dizziness, weakness, fainting, [and] burning pain in back (next to incision), left leg inner thigh, and right hip."   *Id*.   On the same date, Ms. McCosh

filled out and signed a physical functional capacity questionnaire for Plaintiff.   [*Doc. 13-26* at 8].

On that form, Ms. McCosh listed Plaintiff's diagnoses as back pain, neck pain, sciatica,

hypertension, and syncope; gave a prognosis that "full recovery is poor;" and indicated that his

impairments were expected to last at least twelve months.   *Id*.   She further indicated that Plaintiff

could stand/walk for four hours out of an eight-hour workday, and could likewise sit for four out of

eight hours.   *Id*.   She indicated that Plaintiff could frequently lift and carry less than ten pounds,

could occasionally lift/carry ten pounds, rarely lift/carry twenty pounds, and never lift/carry fifty

pounds, in a competitive work situation.   *Id*.   Also, Plaintiff could frequently finger, grasp, and

handle, but could rarely stoop/bend or crouch.   *Id*.   Ms. McCosh opined that Plaintiff's

"experience of pain" would frequently be "severe enough to interfere with his attention and

concentration needed to perform even simple work tasks."   *Id*.   She indicated that Plaintiff had

five out of nine stated symptoms, which were positive straight leg raising test, impaired sleep,

sensory loss, muscle weakness, and reduced range of motion.   *Id*.   Finally, she indicated that, on

average, Plaintiff's impairments or treatment would cause him to be absent from work

approximately four days per month, but that it "depends on the work."   *Id*.

The ALJ gave "little weight" to Ms. McCosh's opinion "because it is brief, conclusory, and

inadequately supported by clinical findings.   An opinion that is not from an acceptable medical

source is not entitled to be given the same weight as a qualifying medical source opinion."

[*Doc. 13-6* at 25] (citations omitted).   The ALJ also indicated that Ms. McCosh's functional

assessments were "inconsistent with [Plaintiff]'s admitted activities of daily living that have

already been described above in this decision."   *Id*. (citing *Doc. 13-26* at 2 through *Doc. 13-27*

at 23, consisting of medical records from Mimbres Valley Clinic, where Plaintiff was treated by Ms. McCosh.   Previously, in her summarization of Plaintiff's hearing testimony, the ALJ noted that Plaintiff stated that: (1) he had difficulty going up the four steps to his parents' mobile home; (2) "he cannot engage in heavy lifting, is unable to stand for more than 10 minutes, sitting is limited, and due to muscle spasms he must lay on his stomach for 20-30 minutes"; (3) "he can lift milk from the refrigerator"; (4) "he experiences difficulty doing laundry and washing dishes"; (5) "he *spends* approximately five hours a day in a recliner"; (6) "he experiences numbness in the right knee and experiences stabbing shooting pains"; (7) "he cannot horseback ride or cannot ride his motorcycle"; and (8) "he can read, watch television and movies."   *Id*. at 23.   The ALJ did not explain how any of these "admitted activities" are inconsistent with Ms. McCosh's functional assessments.

Defendant argues on appeal that the ALJ may properly reject a medical opinion because it is "conclusory," citing *Raymond v. Astrue*, 621 F.3d 1269, 1272 (10th Cir. 2009).   [*Doc. 21* at 8]. Here, CNP McCosh's opinion consisted of filling out a form functionality assessment that was apparently provided by the state Division of Disability Services (hereinafter "DDS").   *See* [*Doc. 13-27* at 8 (July 6, 2011 record notation by Ms. McCosh:   "[Plaintiff] brought in some paper work from the state for disability")].   It seems somewhat disingenuous to reject a form that was provided by DDS on the ground that it is "conclusory."   In any event, there is a significant difference between explaining how a decision is conclusory, and simply labeling it as such.   In *Raymond*, the case cited by Defendant, the court found that the ALJ had "articulate[d] specific, legitimate reasons for his decision," such as, that the physician's notes at issue simply recited the

plaintiff's complaints, were not based on a physical examination, provided little analysis of the plaintiff physical limitations, and were inconsistent with other medical evidence that was based on physical examinations. *Id.* (citation omitted). The *Raymond* court also concluded that "each of [the ALJ's] findings [wa]s supported by substantial evidence in the record." *Id.* Here, the ALJ effectively rejected[5] Ms. McCosh's physical function assessment because it was "conclusory," inconsistent with Plaintiff's "admitted activities," "inadequately supported by clinical findings," and did not come "from an acceptable medical source." [*Doc. 13-6* at 25]. Without more explanation, these reasons are inadequate to reject a treating medical provider's opinion. *See* Soc. Sec. Rep. 06-3p at *5 (opinions from not acceptable medical sources should be weighed in accordance with the same 20 C.F.R. §§ 404.1527(d) and 416.927(d) factors applicable to acceptable medical sources). *See also Givens v. Astrue*, 251 F. App'x 561, 568 (10th Cir. Oct. 18, 2007) (unpublished) (ALJ "must provide adequate reasons" for rejecting "significantly probative medical evidence"); *Sills v. Astrue*, 11-0793, *Doc. 23* at 16-17 (D. N.M. July 17, 2012) (unpublished) (ALJ's failures to both "provide a clear reason" for rejecting a not acceptable treating source's opinion and to discuss the 20 C.F.R. § 416.927 factors requires remand).

Moreover, Defendant's efforts to provide reasons for the ALJ's decision constitute impermissible post-hoc reasoning. *See Haga v. Astrue*, 482 F.3d 1205, 1207-08 (10th Cir. 2007) ("court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself"). An ALJ's findings of fact must be tied to the evidence

---

[5] Assigning "little weight" to a medical source's opinion effectively rejects it. *See, e.g., Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012).

by the ALJ, and post-hoc citation to the record in support of those facts is not permissible.   *See, e.g., Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (if harmless-error determination rests on matters not considered by the ALJ, it risks violating the proscription against post-hoc justification).   For example, Defendant contends that Ms. McCosh was not "a treating mental health provider,"[6] because she examined Plaintiff "**only twice** before she issued her July 2011 opinion."   [*Doc. 21* at 8].   However, the ALJ did not herself give this as a reason for rejecting Ms. McCosh's opinion.   Similarly, in support of the ALJ's statement that Ms. McCosh's opinion was "inadequately supported by clinical findings," Defendant asserts that "Plaintiff had normal or near-normal (4+/5) strength during all but one examination," "did not have any muscle wasting or atrophy in his legs," and "there was no evidence of objectively reduced sensation or other neurological abnormalities."   *Id.* at 9.   Again, however, this Court has no way of discerning the ALJ's reasons for her statement regarding inadequate clinical findings because she did not identify them.   Defendant's effort to identify inconsistencies between Ms. McCosh's clinical notes and her opinion on appeal is simply impermissible post-hoc reasoning.   The ALJ's failure to tie her conclusions regarding Ms. McCosh's opinion to the evidence, along with her failure to consider and discuss the regulatory weighing factors constitute errors that require reversal.

---

[6] It is not clear why Defendant refers to Ms. McCosh as a "mental health provider," since she specializes in family practice and only expressed an opinion regarding Plaintiff's physical functionality.   *See* [*Doc. 13-26* at 8]. However, Plaintiff did receive psychological counseling from one of Ms. McCosh's colleagues, Barbara Cichosz. LMFT.   *See Id.* at 34-35, 38-39, and 42-43.

### B.   The ALJ's Listing 12.04 Determination

Certain impairments are considered severe enough to justify a presumption of disability in those who meet their criteria.   Those impairments are set forth in an appendix of "Listed Impairments," at 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).   Listing 12.04 is within the category "Mental Disorders," and specifically details the criteria for "affective disorders."   At step three of the SEP, the ALJ considers whether any of the claimant's impairments "meets or medically equals" one of the listed impairments.   If an impairment is found to meet or medically equal a listed impairment, it is conclusively presumed to be disabling, and there is no need for further SEP analysis.   *See* 20 C.F.R. §§ 404.1520(d) and 416.920(d).

In this case, the ALJ found at step two that "depressive disorder" is a severe impairment from which Plaintiff suffers.   [*Doc. 13-6* at 20].   At step three, the ALJ found that Plaintiff had no impairment or combination of impairments that met or medically equaled any of the listed impairments.   *Id.*   Plaintiff claims that this finding is erroneous, and that "[t]here is no indication that ALJ Lindsay actually considered the probative evidence of record" in reaching her listing conclusions.   [*Doc. 18* at 14].   More specifically, in her reply, Plaintiff argues that the ALJ's conclusion that his depression does not satisfy the criteria of Listing 12.04 is both without explanation that is adequate for meaningful review, and not supported by the evidence.   [*Doc. 26* at 4-7].

14

Listing 12.04 describes "affective disorders" as:

Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome.   Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.

The required level of severity for these disorders is met when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in [paragraph] C are satisfied.

20 C.F.R. § 404, Subpt. P, Appx. 1, § 12.04.   For depression to satisfy the Listing 12.04 criteria there must be a "[m]edically documented persistence, either continuous or intermittent, of . . . [d]epressive syndrome" that is characterized by at least four out of nine stated symptoms in paragraph A, and:

resulting in at least two of the following:

1. Marked restriction of activities of daily living; or
2. Marked difficulties in maintaining social functioning; or
3. Marked difficulties in maintaining concentration, persistence, or pace; or
4. Repeated episodes of decompensation, each of extended duration.[7]

*Id.*, ¶ B.

Alternatively, Paragraph C provides that Listing 12.04 may also be satisfied if there is a:

Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

---

[7] "The term repeated episodes of decompensation, each of extended duration in these listings means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.  If [claimant has] experienced more frequent episodes of shorter duration or less frequent episodes of longer duration, we must use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." POMS: DI 34001.032(C)(4) available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0434001032#di34001032_mentaldecompensation (site last visited on December 7, 2016).

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

*Id*., ¶ C.

Regarding Listings 12.04 and 12.08, the ALJ found that "[b]ecause [Plaintiff]'s mental impairments do not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." [*Doc. 13-*6 at 21]. The ALJ further found that Plaintiff "has experienced no episodes of decompensation, which have been of extended duration" (*id*. at 21), and that there was "no evidence of" the paragraph C criteria (*id*. at 21-22). The ALJ concluded that the Paragraph C criteria were also not satisfied. *Id*. at 22.

Again, however, the ALJ fails to provide support for her findings. Plaintiff clearly does suffer from depression, as the ALJ herself found. [*Doc. 13-*6 at 20]. *See also* [*Doc 13-*26 at 11] (Plaintiff's Aug. 12, 2011 PHQ-9[8] score of 20, which indicates "severe depression"). In finding

---

[8] The PHQ-9 (Patient Health Questionnaire 9) is a nine-item scale that is self-administered and is used to screen patients for depression. "It is one of the most validated tools in mental health and can be a powerful tool to assist clinicians with diagnosing depression and monitoring treatment response. The nine items of the PHQ-9 are based directly on the nine diagnostic criteria for major depressive disorder in the DSM-IV." https://aims.uw.edu/resource-library/phq-9-depression-scale (site last visited December 7, 2016). The test itself provides the following total score interpretations: 0-4 indicates minimal depression; 5-9 indicates mild depression;

that Plaintiff's depression did not satisfy the Listing 12.04 Paragraph B criteria, the ALJ found that Plaintiff has mild restriction in his activities of daily living, and moderate difficulties in social functioning and concentration, persistence or pace.   [*Doc. 13-6* at 21].   In so finding, the ALJ did not rely on any mental health sources, nor did she specify the portions of the cited evidence upon which she relied.   Instead, the ALJ cites generally to a physical examination report by Laura Briggs, M.D. (*Doc. 13-16* at 22-26), an undated [9] Function Report filled out by Plaintiff (*Doc. 13-14* at 24-31), and Plaintiff's entire hearing testimony.

In her RFC assessment of Plaintiff, the ALJ stated that she gave "limited weight" to the DDS consulting physicians' opinions at both the initial and reconsideration levels of reviewing Plaintiff's claims because "they indicated [Plaintiff has] no severe mental impairment, but the evidence of record does show mental limitations."   [*Doc. 13-6* at 24-25] (citing *Doc. 13-9* at 6-15 and 17-26; *Doc. 13-16* at 31-38).   One of the opinions cited by the ALJ is a physical RFC assessment dated October 21, 2011 by Stephen A. Whaley, M.D.   [*Doc. 13-16* at 31-38]. Dr. Whaley did not even discuss Plaintiff's depression, nor did he purport to be assessing Plaintiff's mental functionality.   *Id.*   The two other documents cited by the ALJ explain the

_____

10-14 indicates moderate depression; 15-19 indicates moderately severe depression; and 20-27 indicates severe depression.   PHQ9 Copyright © Pfizer Inc.

[9] Although Plaintiff's function report is undated, it is located in the record between a form survey of pain and other symptoms, which was filled out by Plaintiff and dated August 23, 2011 (*Doc. 13-14* at 22-23), and a Request for Evidence or Assistance (Disability Case) from Arkansas DDS to New Mexico DDS, dated September 13, 2011 (*id.* at 32).   Thus, it is reasonable to assume that the function report was filled out either on one of the, or between the two, dates.   On the other hand, Plaintiff testified at the ALJ hearing more than two years later, on October 3, 2013. [*Doc. 13-8* at 2-41].

reasons for denial of Plaintiff's DIB and SSI claims at the reconsideration level, and are essentially identical.   In those reports, Stephen Fair, Ph.D., noted as follows:

> On recon[sideration], the [Plaintiff]   alleges depression.   There is [medical evidence of record] from Mimbres Valley Clinic, dated 9/11, indicating [Plaintiff diagnosis] of depression, anxiety nos, [alcohol] abuse, and personality [disorder] nos.   However, there is no more current [medical evidence of record] indicating [Plaintiff] psych [diagnosis or treatment].   So, without a psych [consultative examination], there is insufficient evidence of current [Plaintiff mental health diagnosis] and functioning to adjudicate this claim.

[*Doc. 13-9* at 11, 22].   This statement does not constitute a "finding" by Dr. Fair to the effect that Plaintiff does not suffer from severe depression.   However, that is essentially how the ALJ treated it.   [*Doc. 13-6* at 24-25].

Unfortunately, it does not appear that a psychiatric consultative examination was ever requested by DDS, despite the agreement of Dr. Fair and Jenelle Lofton-Batchan, the reconsideration level disability adjudicator, that one was needed.   *Id.* at 9-10, 20.   However, there is considerable evidence relating to Plaintiff's depression in the record, including Socorro Mental Health, Inc. documents:   (1) September 20, 2012 Initial Psychiatric Evaluation by Glenn Michael Dempsey, M.D. (*Doc. 13-27* at 24-25); (2) Comprehensive Service Plan, dated April 29, 2013 (*id*. at 29-31); and Initial Behavioral Health Assessment, dated July 13, 2012 (*id*. at 32-38). In addition, there are in-patient psychiatric hospitalization records from Gila Regional Medical Center for the periods: (1) from April 13-19, 2012 (*Doc. 13-33* at 13 through *Doc. 13-41* at 7); (2) from April 28, 2012 through May 1, 2012 (*Doc. 13-28* at 2 through *Doc. 13-33* at 12); and (3) from June 24-27, 2012 (*Doc. 13-43* at 2 through *Doc. 13-44* at 3), as well as treatment records

18

from Border Area Mental Health for the period from March 13, 2012 through September 11, 2013 (*Doc. 13-50* at 4-56).

These records are evidence that Plaintiff has a well-established history of depression symptoms and treatment, which was not available to Dr. Fair when he indicated that there was "insufficient evidence" for him to adjudicate Plaintiff's depression claim.   [*Doc. 13-9* at 11, 22]. However, that evidence was fully available to the ALJ prior to issuance of her decision on January 24, 2014.   Despite that availability, the ALJ did not discuss, or even cite, any of these records in her opinion.   Among other things, the records establish that Plaintiff was hospitalized for a total of fifteen days within a period of just less than eleven weeks in 2012, due to his suicidal thoughts and actions.[10]   Even more significantly, Plaintiff's medical records document his psychological condition and its effects on him in a detailed and voluminous manner, yet the ALJ failed to even discuss them.   That failure violates the well-established precept that, "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [s]he chooses not to rely upon, as well as significantly probative evidence [s]he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996) (citations omitted).   *See also Carpenter v.*

---

[10] As noted in n.5, *supra*, these hospitalizations do not qualify as "repeated episodes of decompensation, each of extended duration" because, although Plaintiff did suffer three episodes, they were not each two weeks long. However, they might be considered to be "more frequent episodes of shorter duration," with respect to which the ALJ is directed to use her judgment "to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." POMS: DI 34001.032(C)(4) available at  https://secure.ssa.gov/apps10/poms.nsf/lnx/0434001032#di34001032_mentaldecompensation  (site last visited on December 7, 2016).    If the ALJ in this case in fact exercised her judgment and concluded that Plaintiff's "decompensation" episodes simply do not equal the listing, she should have stated that in her decision, along with her reasons for that conclusion.

*Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008) (ALJ's failure "to adequately discuss the evidence and tie his conclusions to the evidence" mandates reversal).   This the ALJ failed to do, which requires that this case be remanded for further proceedings.

### C.   Plaintiff's Other Claims

Plaintiff also argues that the ALJ erred by failing to resolve a conflict between the VE's testimony and the DOT, and that her RFC finding that Plaintiff is capable of light work is unsupported by the evidence and contrary to law.   Since this Court has determined that the ALJ's errors with respect to Ms. McCosh's opinion and Listing 12.04, detailed above, warrant remand, it is not necessary to also consider Plaintiff's other claims of error.   *See Clifton*, 79 F.3d at 1010. (remand for additional proceedings at step three renders consideration of step five contentions unnecessary).   Nonetheless, this Court notes, as did the *Clifton* court (*id.*), that Plaintiff appears to have raised some meritorious arguments.   For example, the question of whether the representative jobs proposed by the VE could actually be performed by someone with the RFC the ALJ had assigned to Plaintiff appears to be a legitimate issue.   However, since that issue and others are likely to be affected by the proceedings on remand, they need not be evaluated here.   *See Robinson v. Barnhart*, 366 F.3d 1078, 1085 (10th Cir. 2004) (declining to reach the plaintiff's claims because they may be affected by resolution of the case on remand).

## VI.   Recommended Disposition

**IT IS HEREBY RECOMMENDED,** for the reasons stated above, that ***Plaintiff's Motion to Reverse and Remand for a Rehearing With Supporting Memorandum*** (*Doc. 16*) be **GRANTED** as set forth above, and the decision of the Commissioner be **REMANDED** for further proceedings consistent with this opinion.

*Lourdes a. Martínez*
**THE HONORABLE LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**